**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE:<br>EDGARDO LEBRON VAGU and<br>LUZ NELIDA ZAPATA OQUENDO,<br><br>    Debtors. | CASE NO. 18-05805 MAG11<br><br>Chapter 11<br><br>FILED & ENTERED ON 07/21/2023 |

**OPINION AND ORDER**

Edgardo Lebron Vagu and Luz Nelida Zapata Oquendo ("Debtors") filed their Chapter 11 petition on October 2, 2018. (Dkt. # 1.) After protracted litigation, the court confirmed Debtors' Chapter 11 Plan on February 15, 2022, as supplemented (the "Confirmed Plan".) (Dkt. ## 319, 339, 354.) The Confirmed Plan provides as its effective date May 30, 2022, with plan payments beginning on June 15, 2022.[1] (Dkt. # 339, p. 4.) But on May 17, 2022, Debtors moved the court to extend the effective date until December 15, 2022, which the court granted as unopposed. (Dkt. ## 367, 372, 376.)

Pending before the court is Debtors' second motion for an extension of time to commence plan payments in September 2023 (Dkt. # 388); the objection thereto filed by the U.S. Trustee (Dkt. # 402); Debtors' response to the U.S. Trustee's objection (Dkt. # 409); Debtors' motion in compliance with order (Dkt. # 415); and Debtors' post confirmation amended Chapter 11 plan (the "Amended Chapter 11 Plan") which further extends the effective date until December 15, 2023 (Dkt. # 416.) In addition to objecting to the extension of the effective date of

---

[1] Generally, the effective date of a plan of reorganization is when plan payments begin. In subsequent pleadings requesting an extension of the commencement of plan payments, Debtors refer to the effective date as the date these payments under the plan will commence.

the Confirmed Plan, the U.S. Trustee moves for the dismissal of the case under 11 U.S.C. §§ 1112(b)(4)(M) or 1112(b)(4)(N).

The court held an evidentiary hearing on April 13, 2023 (the "Post Confirmation Hearing") (Dkt. # 428) and the parties filed their respective post hearing briefs. (Dkt. ## 433 & 441.) For the reasons stated herein, this court denies Debtors' second motion for extension of time to commence plan payments and the confirmation of the Amended Chapter 11 Plan. (Dkt. ## 388 & 416.) Moreover, the case is dismissed upon the U.S. Trustee's request pursuant to 11 U.S.C. §§ 1112(b)(4)(M) and 1112(b)(4)(N).

## I. JURISDICTION

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a), Local Civil Rule 83K(a), and the General Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico dated July 19, 1984 (Torruella, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b). Venue of this proceeding is proper under 28 U.S.C. §§ 1408 and 1409.

## II. PROCEDURAL BACKGROUND AND FACTS

### (i) Events that led to confirmation of the Chapter 11 plan.

Debtors filed their voluntary petition for relief under Chapter 11 of the Bankruptcy Code on October 2, 2018. (Dkt. # 1.) After much litigation, including the reconsideration of a dismissal order entered on November 25, 2019 for failure to file the disclosure statement and plan (Dkt. # 150) and multiple requests for extension, the disclosure statement and plan were filed on October 16, 2020. (Dkt. ## 223, 224.) On August 18, 2021, Debtors filed an amended Chapter 11 plan. (Dkt. # 319.) On September 17, 2021, Debtors filed an urgent motion requesting a continuance of the hearing on confirmation alleging an improper garnishment of the IRS in August and

September 2021. (Dkt. # 325.) The court granted such motion and rescheduled the confirmation hearing for November 17, 2021. (Dkt. # 326.) The court subsequently continued the confirmation hearing upon another request from Debtors for January 12, 2022. (Dkt. ## 330, 331.)

On January 11, 2022, Debtors filed a supplement to the Chapter 11 plan (the "Plan Supplement"). (Dkt. # 339.) The Plan Supplement extended the effective date of the plan[2] until May 30, 2022 allegedly due to "several setbacks that [were] out of [Debtors'] control." Id. at p. 1, ¶ 4. Debtors listed such events as follows: (1) the IRS' improper garnishment; (2) Debtor Lebrón Vagu's car accident and injuries that made it difficult for him to work on his reorganization efforts; and (3) the COVID-19 pandemic, which made it impossible to find skilled labor to work on the restaurant they intended to open in the municipality of Mayagüez, Café Paris. Id. at pp. 2-3.

Debtors summarized their means to fund the plan as follows: (1) income from Paco Mer Sabroso, which is a restaurant in the municipality of Añasco; (2) income from their business Art & Copy; and (3) proceeds from inheritances as Debtors were beneficiaries of two probate estates. (Dkt. # 339, pp. 3-4, ¶¶ 1-2.) Joint Debtor Luz Nelida Zapata Oquendo was the beneficiary with her half-sister of a lot of land that was later sold receiving proceeds thereof in the amount of approximately $172,000.00. Id. at p. 4, ¶ 3. Debtor Lebron Vagu was the sole beneficiary of a probate estate that included three lots of land that were "expected to be sold by the end of January for approximately $83,000.00." Id. Thus, Debtors requested the effective date to be May 30, 2022, with plan payments beginning on June 15, 2022 to allow the opening of Café Paris before that time. Id. at pp. 4-5.

---

[2] The plan filed at Dkt. # 319 defined "effective date" as the date that is "thirty (30) days from the date in which the Confirmation of the Plan be declared final and [unappealable]." (Dkt. # 319, p. 4.)

On January 12, 2022, the court held the confirmation hearing where the court found that the plan filed on August 18, 2021 at Dkt. # 319 as supplemented at Dkt. # 339 met all the requirements of 11 U.S.C. § 1129(b). (Dkt. # 343.) However, confirmation was postponed for Debtors to give proper notice of the supplement filed at Dkt. # 339. Since no objections to confirmation were filed, the court entered an order confirming the plan on February 15, 2022. (Dkt. # 354.)

**(ii)     The first motion to extend the effective date until December 15, 2022.**

On May 17, 2022, Debtors filed a motion for extension of time to commence plan payments requesting the court to postpone the effective date of the Confirmed Plan until December 15, 2022. (Dkt. # 367.) Debtors stated that they needed the opening of their new restaurant Café Paris to fund the plan, and while the goal was to open such restaurant in January 2022, they were not able to finalize the construction. Id. at p. 1. Debtors noted the lack of personnel to work on the construction project, scarcity of construction materials and air conditioning electrical and kitchen equipment, among others. Id. at p. 2.

On May 18, 2022, the court entered an order for Debtors to supplement the motion for extension of time to commence plan payments "pursuant to PR LBR 9013-1(c) by giving adequate notice to all parties in interest, including the appropriate language for parties to respond to the motion, and filing a certificate of service with the court so showing." (Dkt. # 371.) On May 19, 2022, Debtors re-filed their motion as ordered by the court. (Dkt. # 372.)

On June 14, 2022, because no oppositions were filed timely, the court entered an order granting Debtors' request to postpone the effective date of the Confirmed Plan until December 15, 2022. (Dkt. # 376.)

**(iii)     The second motion to extend the effective date until September 2023.**

On November 21, 2022, Debtors filed another motion for extension of time to commence plan payments and requested the court to postpone the effective date of the Confirmed Plan until September 2023. Debtors provided the same grounds for this request as the previous motion for extension of time to commence plan payments. (Dkt. # 388, pp. 1-2.)

On December 21, 2022, the U.S. Trustee opposed Debtors' request. (Dkt. # 402.) She argued the following: (1) Debtors have not discussed the other means of funding the plan, such as the sale of real properties and the proceeds they received from the sale of their inheritance interests; (2) the operating reports filed by Debtors for March 2022 through November 2022, which cover the full nine months following the confirmation of their plan reflect that Debtors have sustained a net loss of over $50,000.00; (3) the requested modification does not comply with 11 U.S.C. § 1129(a)(9)(C) because Debtors would not finish paying priority tax claims until almost ten years after the order for relief; (4) payments to priority claims are unfeasible; and (5) Debtors have failed to keep current with the Fed. R. Bankr. P. 2015.3 reports for their wholly owned entities, Lebron & Asociados, Inc., and Monalisa Dream Group, LLC.[3] (Dkt. # 388, pp. 3, 6-7). She further requested that the court enter an order for Debtors to show cause as to why the case should not be dismissed under 11 U.S.C. §§ 1112(b)(4)(M) or 1112(b)(4)(N). Id. at p. 7, ¶ 35.

On January 11, 2023, Debtors filed a reply to the U.S. Trustee's position. (Dkt. # 409.) Debtors explained that: (1) the property sales generated $303,216.00, of which Debtors used

---

[3] Fed. R. Bankr. P. 2015.3 requires Chapter 11 debtors to file "periodic financial reports of the value, operations, and profitability of each entity that is not a publicly traded corporation or a debtor in a case under title 11, and in which the estate holds a substantial or controlling interest." Fed. R. Bankr. P. 2015.3. Such reports shall be filed "no less frequently than every six months thereafter, until the effective date of a plan or the case is dismissed or converted." Id. At this time, Debtors are up to date with the filing of these reports, except for the December 2021 report. See Dkt. ## 268-272, 408, 443, 444. Therefore, the court finds that this argument is now moot.

$171,470.03 in sale costs and property tax payments and the remaining amount of $131,745.97 was used in part to purchase inventory for Debtors' businesses and in part for remodeling projects; (2) they have been struggling to obtain personnel to finalize the construction of Café Paris, which has been delayed due to the COVID-19 pandemic, Debtor Lebron Vagu's car accident, the death of a family member, scarcity of materials and equipment, and the passage of hurricane Fiona, among others; (3) no creditor has objected to the motion for extension of time to commence plan payments; and (4) the IRS' Internal Revenue Manual (the "I.R.M.") § 5.17.10.9.4.3 states that consent may be knowingly or by not objecting to the proposed plan and thus, the IRS consents to the extension of the effective date. (Dkt. # 409.)  Additionally, Debtors state that if their request is granted, creditors would only have to wait a slightly longer period to commence receiving payments, as opposed to receiving next to nothing on their claims if Debtors are not able to proceed with their reorganization. Id. at p. 7, ¶ 22.

On February 3, 2023, the court entered an order providing that Debtors' request in the motion for an extension of time to commence plan payments constituted a modification of their confirmed plan governed by 11 U.S.C § 1127(e) and by Fed. R. Bankr. P. 3019(b) and the same did not comply with the requirements of Fed. R. Bankr. P. 3019(b). Therefore, the Debtors were ordered to supplement within fourteen (14) days the motion filed at Dkt. # 388 to comply with the provisions of Fed. R. Bankr. P. 3019(b), which requires Debtors to file the motion together with the proposed modification and to include a 21-day objection language for parties in interest to file any objections. Once supplemented, Debtors were ordered to give notice by mail of the motion as supplemented to all creditors and parties in interest and to file a certificate of service with the court so showing. A hearing to consider the motion for an extension of time to commence plan payments (Dkt. # 388), the U.S. Trustee's objection (Dkt. # 402), and any other

timely objection was scheduled for April 14, 2023, at 9:30 A.M.[4] The court advised Debtors to come prepared to submit evidence of compliance with all requirements of 11 U.S.C. § 1127(e) to modify a Chapter 11 plan, including compliance with the confirmation requirements of 11 U.S.C § 1129, and to address the matters raised by the U.S. Trustee in its objection. (Dkt. # 411.)

**(iv)     The Amended Chapter 11 plan.**

On February 14, 2023, Debtors filed a motion in compliance with order and the Amended Chapter 11 Plan. The Amended Chapter 11 Plan is identical to the Confirmed Plan but amends the definition of "effective date" as follows: "[t]he effective date shall be December 15, 2023." (Dkt. ## 415 & 416.)

The court notes that the second motion for extension of time to commence plan payments filed in November 2022 requested the postponement of the effective date of the plan until September 2023. (Dkt. # 388.) Thus, three months later, Debtors requested an additional extension of three months through the Amended Chapter 11 Plan.

**(v)     Post Confirmation Hearing held on April 13, 2023 and feasibility report.**

The court held the Post Confirmation Hearing on April 13, 2023 where Debtors' financial advisor, Albert Tamarez-Vasquez testified. Debtors informed the court at such hearing that Mr. Tamarez had prepared a feasibility report and would testify regarding post confirmation events and the feasibility of the Amended Chapter 11 Plan. (Dkt. # 427, *Audio File*.)

After the parties argued their respective positions, Mr. Tamarez was sworn in and proceeded to testify as an expert witness. Mr. Tamarez concluded that the Amended Chapter 11 Plan is feasible with the operation of Café Paris. (Testimony of Mr. Tamarez on April 13, 2023, Dkt. # 427, *Audio File*.) He stated that pursuant to the financial projections attached to the

---

[4] The court later rescheduled the hearing to April 13, 2023 at 9:30 A.M. (Dkt. # 413.)

Disclosure Statement filed at Dkt. # 227, the income to be received from Café Paris is about

$86,000.00 monthly and it will result in a net profit of $40,000.00 a month. Id. The projections

attached to the Disclosure Statement (the "2020 Projections") were prepared on October 15,

2020 by accountant Heriberto Reguero Acevedo. (Dkt. # 227, p.180-183)  Mr. Tamarez used the

2020 Projections to reach the conclusion that the Amended Chapter 11 Plan is feasible.

(Testimony of Mr. Tamarez on April 13, 2023, Dkt. # 427, *Audio File.*) While Mr. Tamarez

based such conclusion on the future operation of Café Paris, he admitted that he does not have

personal knowledge of when Café Paris will open. Id.

　　　During cross-examination, inconsistencies between the Disclosure Statement projections

and the actual numbers reported in the monthly operating reports filed in this case arose. Per the

2020 Projections, Debtors' cash on hand at the end of 2022 would be approximately

$954,241.00. However, according to the February 2023 operating report, the balance of all

accounts owned by Debtors at the end of such month was $10,705.35. (Dkt. # 419-9, p. 2.) Mr.

Tamarez stated that the projections were made considering the operations of all businesses,

including Café Paris. He further stated that there is currently no other cafeteria around the area

where Café Paris will operate, and Debtors understand they will meet the projections presented

to the court years ago and the ones included in his report once Café Paris begins operation.

(Testimony of Mr. Tamarez on April 13, 2023, Dkt. # 427, *Audio File.*)

　　　At the end of the hearing the court ordered the parties to file post-hearing briefs. (Dkt. #

428.)

　　　On April 19, 2023, Debtors filed Mr. Tamarez' feasibility report. (Dkt. # 429-1.)

In compliance with the court's order, the U.S. Trustee filed her brief on April 27, 2023. (Dkt. # 433.)  After two extensions of time, the Debtors filed their response on May 26, 2023. (Dkt. # 441.)

### III. PARTIES' POSITIONS

#### (i) U.S. Trustee's position.

First, the U.S. Trustee argues that the length of the requested extension of the effective date is unreasonable. She notes that this is Debtors' third bankruptcy petition, and the court has been more than generous throughout this case in extending the effective date of the Confirmed Plan. (Dkt. # 433, pp. 3-5, ¶¶ 7-25.) She also notes that Debtors sold certain properties between 2021 and 2022 and received $303,216.00 in sales proceeds but failed to fund their Confirmed Plan pursuant to its terms and instead used the funds to purchase inventory for their businesses and for remodeling projects. Id. at pp. 5-6, ¶ 26. Additionally, Debtors "chose to pay CRIM a substantial $117,408, to the detriment of the other creditors, when the confirmed plan stated that CRIM's debts would be paid over a five-year plan basis." Id. at p. 6, ¶¶ 27.

Second, the U.S. Trustee argues that the Amended Chapter 11 Plan does not comply with 11 U.S.C. § 1129(a)(9)(C) because priority tax creditors have not accepted payment over a period of five years from the order for relief. The priority tax claims are the following: (1) no. 9-6 filed by the IRS in the amount of $105,927.68; (2) no. 15-1 filed by the Puerto Rico Treasury Department in the amount of $203,144.87; (3) no. 16-1 filed by the Puerto Rico Treasury Department in the amount of $220,354.65; and (4) no. 18-1 filed by the Puerto Rico Department of Labor in the amount of $12,426.06. (Claims Register Nos. 9-6, 15-1, 16-1 & 18-1; Dkt. # 433, p. 7.) Because Debtors propose to begin making payments to tax authorities on December 15,

2023 which is already five years past such five-year period, "they will not finish paying these claims until after 10 years have passed since the order for relief." (Dkt. # 433, p. 7, ¶¶ 30-32.)

Third, the U.S. Trustee states that Debtors failed to establish feasibility and thus, the Amended Chapter 11 Plan does not comply with 11 U.S.C. § 1129(a)(11). While Debtors state that they will be able to comply with the Amended Chapter 11 Plan once Café Paris opens, they have been trying to open such restaurant since at least October 2018. (Dkt. # 433, pp. 9-10, ¶¶ 43, 44.)

The U.S. Trustee raises various issues regarding the feasibility report. The projections attached to the report and upon which Mr. Tamarez based his opinion are dated October 15, 2020 and were not prepared by him but by Debtors' accountant Heriberto Reguero Acevedo "and there was no evidence to establish that Mr. Tamarez was familiar with the methodology and underlying data that Mr. Reguero used to prepare the Projections." (Dkt. # 433, pp. 10-11, ¶¶ 48, 49.) These projections are not supported by the monthly operating reports or the Fed. R. Bankr. P. 2015.3 reports and "it would be unrealistic to expect that Café Paris, on which Mr. Reguero placed similar expectations, will be able to generate a net monthly profit of $42,200." (Dkt. # 433, pp. 11-13, ¶¶ 49-54.

Lastly, the U.S. Trustee requests the court to dismiss the case under § 1112(b)(4)(M) for inability to effectuate substantial consummation of a confirmed plan or § 1112(b)(4)(N) for material default by the debtor with respect to a confirmed plan. Id. at p. 14, ¶ 59.

**(ii)   Debtors' position.**

Debtors stated at the Post Confirmation Hearing that the only reason for the request to extend the effective date is the delay in the construction and opening of Café Paris. (Dkt. # 427, *Audio File*.) Monthly plan payments, most of which will go to priority creditors, are premised on

the opening of Café Paris and Debtors expect such restaurant to open between November and December of 2023. (Dkt. # 427, *Audio File*.) Debtors argue that there were no written objections to the Amended Chapter 11 Plan and Debtors submitted evidence of feasibility at the Post Confirmation Hearing that remains uncontested. (Dkt. # 441, p. 2, ¶¶ 4, 5.) Furthermore, extraordinary circumstances have delayed the construction of Café Paris and "favor giving the Debtors the opportunity to reorganize." (Dkt. # 441, p. 4, ¶¶ 12, 13.)

As to payment of priority claims and compliance with 11 U.S.C. § 1129(a)(9)(C), Debtors argue that pursuant to the I.R.M. § 5.17.10.9.4.3, the IRS is deemed to consent to the proposed amendment for the extension of time to commence plan payments by not filing an objection. (Dkt. # 441, pp. 5-6, ¶¶ 18, 19.) The Puerto Rico Treasury Department has not filed an objection either and the Confirmed Plan in this case included a payment plan for priority tax claims that exceeded five years from the order for relief. (Dkt. # 441, p. 6, ¶¶ 21, 22.) Debtors state that such prior ruling confirming a plan that included payments exceeding five years to priority tax claims constitutes *res judicata*. (Dkt. # 441, pp. 6-8, ¶¶ 21-23, 26.)

As to compliance with confirmation requirements, it is Debtors' position that a post confirmation amendment "simply requires that Debtors comply with §1127" and it does not require votes or approval from creditors. Additionally, Debtors argue that the court already ruled on whether the plan complied with the requirements of 11 U.S.C. §§ 1121-1129. (Dkt. # 441, p. 7-8, ¶¶ 24-26.)

Lastly, Debtors argue that the Amended Chapter 11 Plan is feasible based on the testimony of Mr. Tamarez. The projections Mr. Tamarez used for his testimony are part of the record and "(a)ny party could rely on them at any time and there is no need to reintroduce them

on the record or produce the professional who prepared them a second time." (Dkt. # 441, p. 8, ¶¶ 27, 28.)

## IV.    APPLICABLE LAW AND DISCUSSION

11 U.S.C. § 1127(e) allows Debtors to modify a plan after confirmation but before completion of payments for three enumerated purposes, which include amending the plan to "extend or reduce the time period for such payments." 11 U.S.C. § 1127(e)(2). Debtors are requesting to extend the time in which they will begin payments and therefore, their request falls under the purview of 11 U.S.C. § 1127(e)(2).

As part of the modification requirements, 11 U.S.C. § 1127(f)(1) states that "(s)ections 1121 through 1128 and the requirements of section 1129 apply to any modification under subsection(e)." "A modification is effective only if the court, after notice and a hearing, confirms the plan as modified. To do so, the court must make the same findings required under the Code for confirmation of a plan and, in addition, must find that the circumstances warrant the modification." 6 Norton Bankr. L. & Prac. 3d § 111:2 (May 2023 Update). Therefore, to grant the modification sought by Debtors under the Amended Chapter 11 Plan, the court must find that the plan complies with all the confirmation requirements of 11 U.S.C. § 1129. Among these requirements, the U.S. Trustee argues that the Amended Chapter 11 Plan fails to comply with the confirmation requirements for feasibility under 11 U.S.C. § 1129(a)(11) and for the treatment of priority claims under 11 U.S.C. § 1129(a)(9)(C).

The court notes that while Debtors argue that the Amended Chapter 11 Plan is unopposed, the U.S. Trustee raised a timely objection to the second motion to extend the effective date, which the court stated would be considered at the Post Confirmation Hearing. (Dkt. ## 388, 402, 411.) The court ordered Debtors to supplement the second motion to extend

-12-

the effective date and the same was supplemented with the motion in compliance with order and

the Amended Chapter 11 Plan which simply incorporated the extension of the effective date

originally requested in the motion. (Dkt. ## 415 & 416.)

  **(i)  Feasibility requirements of 11 U.S.C. § 1129(a)(11).**

The Bankruptcy Code in its section 1129(a)(11) requires that "(c)onfirmation of the plan

is not likely to be followed by the liquidation, or the need for further financial reorganization, of

the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization

is proposed in the plan." 11 U.S.C. § 1129(a)(11). This feasibility test "requires the court to

independently determine whether the Plan is workable and has a reasonable likelihood of

success. A plan proponent need only demonstrate that there exists a reasonable prospect of

success and a reasonable assurance that proponents can comply with the plan." In re Charles St.

Afr. Methodist Episcopal Church of Bos., 578 B.R. 56, 103 (Bankr. D. Mass. 2017) (internal

citations omitted). To comply with this requirement, Debtors must show that "the plan is

realistic." Id.

Debtors stated at the Post Confirmation Hearing that the only reason behind the request to

extend the effective date of the Confirmed Plan to December 15, 2023 is the delay in the

construction and opening of Café Paris. (Dkt. # 427, *Audio File*.) Monthly plan payments, most

of which will go to priority creditors, will be funded with the operations of Café Paris and

Debtors expect such restaurant to open between November and December of this year. Id.

This is Debtors' **fourth** request to extend the effective date of the plan, one before it was

confirmed and three after confirmation.[5] In all four requests Debtors cite the same reasons for

---

[5] The effective date per the Confirmed Plan prior to its supplement was April 1, 2022. (Dkt. # 319, p. 4.) The supplement to the Confirmed Plan extends such date to May 31, 2022 with payments under the plan beginning on June 15, 2022. (Dkt. # 339, p. 4.) The first motion to extend the effective date (Dkt. # 372) postpones the effective date until December 15, 2022. (Dkt. # 376.) The second motion to extend the effective date requests the court to further postpone such date until September 2023. (Dkt. # 388.)

their inability to comply with the original effective date of the Confirmed Plan, to wit, Debtor Lebrón Vagu's car accident on October 15, 2021, the IRS' improper garnishment in August and September 2021, the pandemic and post-pandemic climate and the difficulty in finding skilled labor and materials to finalize the construction of Café Paris. (Dkt. ## 339, 372, 388, 441.) Debtors focus on the opening of Café Paris as the pivotal event that will enable Debtors to finally start making the plan payments under the Confirmed Plan.

The U.S. Trustee argues that Debtors have been trying to open Café Paris since 2018 and the first three requests for extension of the effective date are premised on the opening of the business by a certain date that later did not materialize. Thus, as this court considers the fourth request to extend the effective date premised on the opening of Café Paris by November or December 2023, to find that the Amended Chapter 11 Plan is feasible, the court must first determine that in fact Café Paris will be able to open by that time.

The only evidence provided by Debtors related to the opening of Café Paris is Debtor Lebrón Vagu's unsworn statement and a statement of current status of Café Paris (the "Comparative Tables"), both attached to the second motion to extend the effective date filed on November 21, 2022.[6] (Dkt. ## 388-1 & 388-2.) Such statements were not authenticated by Debtor Lebrón Vagu, who was not presented as a witness at the Post Confirmation Hearing and was thus not available for cross-examination. No evidence was presented to the court regarding the current status of the construction of Café Paris and the status of the necessary permits, equipment, and workforce to be able to open and generate the projected revenue by the new proposed effective date of December 15, 2023.

---

The Amended Chapter 11 Plan before the court, which is Debtors' latest request to extend the effective date, requests that such date be further postponed until December 15, 2023 (Dkt. # 416, p. 4.)

[6] Mr. Tamarez, the only witness presented at the Post Confirmation Hearing, testified that he had no personal knowledge of when Café Paris will be able to open for business.

The unsworn statement signed by Debtor Lebrón Vagu provides the same reasons for not opening Café Paris as stated repeatedly in prior motions and concludes stating that "significant progress has been made on the project as can be seen from the Comparative Tables attached to the Motion which were prepared by [him]." (Dkt. # 388-1, p. 2, ¶ 18.) The referred Comparative Tables provide two lists with the same items of the construction project and different percentages of conclusion. The first one is dated May 4, 2022 and the second one is dated November 10, 2022. (Dkt. # 388-2, pp. 1, 3.) Considering the second list, one can see that most of the kitchen equipment including two refrigerators, two freezers, one gas range, three range hoods, one deep fryer, one sandwich unit, two kitchen sinks, and 40% of the tables and chairs have not been purchased. (Dkt. # 388-2.) The exterior lights are at 50%, interior bathrooms at 50%, interior painting at 50% and 40% of the electricity and 17.5% of the plumbing are not finalized. Id. In other words, Café Paris requires a substantial cash investment before it may start operating. But the monthly operating reports do not clearly provide that monies have been spent in this endeavor since November 2022[7] or that there is sufficient cash to fund this investment at this time. More importantly, Debtors did not present evidence that will allow the court to conclude otherwise. Debtors failed to show that the reasons they alleged back in early 2022 for their inability to finalize Café Paris to enable its opening are hurdles that have been overcome, that Debtors are on their way to conclude construction, purchase necessary equipment, obtain required permits, in sum get the business ready for opening and that monies to fund this endeavor have been and will be available before November 2023.

The testimony of Mr. Tamarez, which concludes that the Amended Chapter 11 Plan is feasible, assumes that Café Paris will generate enough funds once opened. (Testimony of Mr.

---

[7] There are multiple entries in the monthly operating reports since November 2022 of debits made in favor of "transfer to check" most around $1,000.00, the purpose of which eludes this court.

Tamarez on April 13, 2023, Dkt. # 427, *Audio File*.) However, Mr. Tamarez acknowledged that

he has no personal knowledge as to when Café Paris will begin operating. Id. Additionally, Mr.

Tamarez' feasibility report and testimony are based on the 2020 Projections which Debtors have

failed to meet. The 2020 Projections provide that Debtors' cash on hand at the end of 2022

would have been approximately $954,241.00. (Dkt. # 227, pp. 182-183.) But the operating report

for December 2022 provides that the balance of all accounts owned by Debtors at the end of such

month was $8,730.84. (Dkt. # 410-9, p. 1.) While such projections assumed that Café Paris

would be operating, and it is not, this court is skeptical that the lack of revenues of Café Paris

alone would account for the difference between the projected cash on hand and the actual cash

on hand at the end of December 2022, which is $945,510.16. In fact, Mr. Tamarez' report

includes projections for Café Paris extracted from the 2020 Projections, which provide that such

business will have a yearly net profit of $506,403.00. (Dkt. # 429-1, p. 19.) Consequently, if the

2020 Projections including Debtors' income from all sources showed a yearly net profit of

$954,241.00, and Mr. Tamarez' projections for Café Paris alone show a yearly net profit of

$506,403.00, the deficit we see today cannot be attributed solely to the failure to launch Café

Paris. Based on the 2020 Projections, simple math would have us conclude that without Café

Paris, Debtors would still be making a yearly net profit of $447,838.00 but the actual net profit at

the end of December 2022 was $8,730.84. Therefore, Debtors' businesses other than Café Paris

are clearly not generating the projected profit. Furthermore, since the filing of the 2020

Projections, Debtors sold real property and used funds in the amount of $131,745.97 "in part to

purchase inventory for Debtors' businesses and in part for the remodeling projects". (Dkt. # 409,

p. 3, ¶ 9.) These were additional monies that were to be used to fund the plan but Debtors used

instead for their operations, which leads the court to conclude that Debtors would be operating at a loss at this time if it had not been for these monies.

The "means of implementation" of the Amended Chapter 11 Plan are identical to the "means of implementation" of the Confirmed Plan. (Dkt. ## 319, pp. 6-8; 416, pp. 6-8.) That is, the Amended Chapter 11 Plan shall be funded by: (1) cash on hand at the effective date; (2) future earnings of the reorganized Debtors; (3) restructuring of Debtors' secured debt; and (4) sale of Debtors' real property, if necessary. Debtors listed five real properties to be sold. Id. Even though only two properties have not been sold per Dkt. # 409, all five are still included as means to fund the Amended Chapter 11 Plan. The sale of properties generated $303,216.00, of which Debtors used $171,470.03 for property tax payments in contravention to the provisions of the Confirmed Plan, which provides that property taxes would be paid over a period of five years (Dkt. # 319, p. 5.) As stated above the remaining funds of $131,745.97 were used "in part to purchase inventory for Debtors' businesses and in part for the remodeling projects" instead of being used to fund the plan. (Dkt. # 409, p. 3, ¶ 9.) While using these funds that were supposed to be used in executing the Confirmed Plan, Debtors have continued requesting the court to extend the effective date forcing the tax authorities and unsecured creditors, which are classes that have received no distribution since the filing of this case almost five years ago, to subsidize Debtors. Such an imposition renders the effective date unreasonable and unfeasible. See In re Premiere Network Servs., Inc., 2005 WL 6443624, at *6 (Bankr. N.D. Tex. 2005) ("(E)xtending and creating uncertainty as to the effective date forces these priority claimants to subsidize the proposed joint Plan and bear the risks of failure. Accordingly, the Plan is found and determined not to be feasible." (Internal citations omitted)).

While the term "effective date" is not defined in the Bankruptcy Code and there are no provisions in the code regarding its timing upon confirmation, such date should "be set forth in the plan with specificity." In re Potomac Iron Works, Inc., 217 B.R. 170, 173 (Bankr. D. Md. 1997) (holding that one-year delay between Chapter 11 plan confirmation order and effective date of debtor's plan was unreasonable and precluded court from confirming plan.) There are two views as to when the effective date is to occur: (1) on or close to the entry of the confirmation order; or (2) around the time when a confirmation order becomes final. See In re Yates Dev., Inc., 258 B.R. 36, 43 (Bankr. M.D. Fla. 2000). See also In re Potomac Iron Works, Inc., 217 B.R. at 173. The confirmation order in this case was entered on February 15, 2022 and has been final since March 2, 2022. (Dkt. # 354.) See Fed. R. Bankr. P. 9023. As explained above, all risk of failure has been shifted to tax authorities and unsecured creditors and more than one year later from the order confirming plan becoming final, the effective date is yet to occur.

For the reasons discussed above Debtors did not meet their burden of showing that the Amended Chapter 11 Plan has "a reasonable prospect of success and [provides] a reasonable assurance that proponents can comply with the plan", that it is realistic in compliance with 11 U.S.C. § 1129(a)(11). See, In re Charles St. Afr. Methodist Episcopal Church of Bos., 578 B.R. at 103.

**(ii)     Required treatment for priority tax claims per 11 U.S.C. § 1129(a)(9)(C).**

11 U.S.C. § 1129(a)(9)(C) requires that tax claims entitled to priority under 11 U.S.C. § 507(a)(8) be paid "over a period ending not later than 5 years after the date of the order for relief…" Id. Such five-year term applies "(e)xcept to the extent that the holder of a particular claim has agreed to a different treatment of such claim…" 11 U.S.C. § 1129(a)(9). The allowed priority tax claims in this case amount to $541,853.26. (Claims Register Nos. 9-6, 15-1, 16-1 &

18-1.) Since this case was filed on October 2, 2018, priority tax claims must be paid in full by October 2023.

Debtors argue that the Amended Chapter 11 Plan complies with 11 U.S.C. § 1129(a)(9)(C) because neither the IRS, the Puerto Rico Treasury Department, nor the Puerto Rico Department of Labor have filed objections to such plan. Debtors cite the IRS' I.R.M. in support of their position that the IRS' failure to object is implied consent. Additionally, Debtors state that the order confirming plan (Dkt. # 354) constitutes *res judicata*.

"Section 1129(a)(9)(C) greatly restricts the ability of a bankruptcy estate to stretch out or otherwise modify obligations that constitute priority tax claims. . . . Under section 1129(a)(9)(C) as revised, however, a plan proponent may only stretch out the payments for five years from the date of the order for relief." 7 Alan N. Resnick & Henry J. Sommer, <u>Collier on Bankruptcy</u> ¶ 1129.02 (16th ed. 2023).

"(F)ailure to vote on confirmation of plan is not equivalent to acceptance of the plan pursuant to Fed. R. Bankr. P. 3018(c) and 11 U.S.C. § 1126(c). The court concludes that Fed. R. Bankr. P. 3018(c), Sections 1126(c) and 1129(a)(8) require the affirmative acceptance of a creditor to accept (vote for) a plan." <u>In re Augusto's Cuisine Corp.</u>, 2017 WL 1169537, *7 (Bankr. D.P.R. Mar. 28, 2017). [8] In <u>Augusto's</u>, the IRS had a priority tax claim that the debtor was proposing to pay in a period surpassing the five years required in 11 U.S.C. § 1129(a)(9)(C). The bankruptcy court ruled that "the treatment afforded to the IRS' unsecured priority tax claim is not in conformity with sections 1129(a)(C) and 1123(a)(3) and thus, a separate class should

---

[8] 11 U.S.C. § 1126(c), which governs whether a class has accepted a plan, applies to the Amended Chapter 11 Plan pursuant to 11 U.S.C. § 1127(f)(1). Furthermore, Fed. R. Bankr. P. 3018(c) specifies that "(a)n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form."

have been created specifying that it is impaired and its vote had to be solicited." In re Augusto's Cuisine Corp., 2017 WL 1169537, *8.

This court agrees with the Augusto's court and finds that in this case the IRS, the Puerto Rico Treasury Department, and the Puerto Rico Department of Labor had to affirmatively accept the treatment proposed in the Amended Chapter 11 Plan. The language of 11 U.S.C. § 1129(a)(9)(C) is clear and requires payment over a maximum of five years except "to the extent that the holder of a particular claim has agreed to a different treatment." In re Augusto's Cuisine Corp., 2017 WL 1169537, *8. Since these priority tax claimants have not agreed to a payment term longer than five years from the order for relief, their silence cannot be deemed implied consent under 11 U.S.C. § 1129(a)(9)(C). It is noteworthy that the length of proposed payments is twice the maximum statutory period.

Debtors argue that since the IRS did not file an objection, they consented to the treatment provided in the Amended Chapter 11 Plan and cite in support the IRS' I.R.M. as follows:

> For a Chapter 11 case to be confirmed, the plan must provide for unsecured priority tax claims (11 USC 507(a)(8)) of the IRS to be paid in full and in cash. Full payment may be on the effective date of the plan or in regular installment payments. If the plan provides for regular installment payments, the unsecured priority claim must be paid within five years of the petition date. Payments must include interest on any unpaid claim amounts after the effective date of the plan. (11 USC 1129(a)(9)(C)) The IRS may consent to other treatment of its priority tax claims by a Chapter 11 plan. Consent may be knowingly or by not objecting to the proposed plan.

(I.R.M. § 5.17.10.9.4.3, https://www.irs.gov/irm/part5/irm_05-017-010 (last updated Feb. 7, 2023.) However, "[t]he provisions of the Internal Revenue Manual govern the internal affairs of the Internal Revenue Service. They do not have the force and effect of law." In re Holmes, 298 B.R. 477, 485 (Bankr. M.D. Ga. 2003) (internal citations omitted). Consequently, the I.R.M. cannot trump the requirements of the Bankruptcy Code as discussed above. Furthermore, the

-20-

Puerto Rico Treasury Department and the Department of Labor are in the same situation as the

IRS, but no internal procedures in those agencies have been presented showing that silence on

their part may be construed as acceptance of the Amended Chapter 11 Plan.

Debtors further argue that since the Confirmed Plan provides for payments to priority tax

creditors in a length exceeding five years from the petition date, the matter constitutes *res*

*judicata* and the court cannot revisit it. "The essential elements of res judicata are: (1) a final

judgment on the merits in an earlier action; (2) an identity of parties or privies in the two suits;

and (3) an identity of the cause of action in both the earlier and later suits." In re Heghmann, 316

B.R. 395, 402 (B.A.P. 1st Cir. 2004) (citing FDIC v. Shearson–American Express, Inc., 996 F.2d

493, 497 (1st Cir.1993)).

Debtors filed a post confirmation modification of their Chapter 11 Plan, which requires

them to comply with all the confirmation requirements under 11 U.S.C. § 1129. The court must

grant parties in interest time to object pursuant to Fed. R. Bankr. P. 3019(b) and must "make the

same findings required under the Code for confirmation of a plan…" 6 Norton Bankr. L. & Prac.

3d § 111:2 (May 2023 Update). Therefore, the elements for *res judicata* are not present in this

case because the court has before it a post confirmation modification and must independently

assess such document's compliance with confirmation requirements. See 11 U.S.C. §§

1127(f)(1). Moreover, the U.S. Trustee is now raising an objection due to such plan's failure to

comply with 11 U.S.C. § 1129(a)(9)(C), which the court is considering for the first time. (Dkt. ##

402, 433.) Consequently, the element of "identity of the cause of action in both the earlier and

later suits" is not present and *res judicata* is not applicable.

In light of the foregoing, the Amended Chapter 11 Plan also fails to provide the required

treatment for priority tax claims per 11 U.S.C. § 1129(a)(9)(C).

-21-

**(iii)     U.S. Trustee's request for dismissal.**

The U.S. Trustee requests the court to dismiss the case under 11 U.S.C. §§ 1112(b)(4)(M) or 1112(b)(4)(N). (Dkt. # 433, p. 14, ¶ 59.) Pursuant to 11 U.S.C. § 1112(b), "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause…" 11 U.S.C. § 1112(b)(4) states that the term "cause" includes: "(M) inability to effectuate substantial consummation of a confirmed plan; (N) material default by the debtor with respect to a confirmed plan." 11 U.S.C. §§ 1112(b)(4)(M), 1112(b)(4)(N). "Once "cause" is established, the burden shifts to the debtor to demonstrate that there are "unusual circumstances" which show that dismissal or conversion to Chapter 7 is not in the best interests of the estate and the creditors." In re Guzman, 2018 WL 3032862, *5 (Bankr. D.P.R. 2018). The court "has broad discretion in determining whether unusual circumstances exist and whether conversion or dismissal is in the best interest of creditors and the estate." Id.

"[T]he Bankruptcy Code provides, and courts have recognized that cause may also be established under Section 1112(b)(4)(M) where the record shows that the debtor cannot effectuate a plan of reorganization." In re Brooks, 488 B.R. 483, 490 (Bankr. N.D. Ga. 2013). Additionally, "[a] debtor's failure to make payments to creditors in contravention of a plan amounts to a material default and constitutes cause to convert or dismiss a bankruptcy case under § 1112(b)(1) and 1112(b)(4)(N)." In re Guzman, 2018 WL 3032862, *5 (internal citations omitted.)

The effective date of the Confirmed Plan is December 15, 2022 (Dkt. # 376) and it is undisputed that Debtors have not begun to make payments to priority and unsecured creditors pursuant to its terms, which entails a material default of a confirmed plan, and the failure to

effectuate substantial consummation of a confirmed plan. Therefore, the court finds that cause for dismissal has been established under both 11 U.S.C. §§ 1112(b)(4)(M) and 1112(b)(4)(N).

It is important to point out that the travails of the case as shown in this opinion include multiple requests for extension of time at all stages of the case, before and after confirmation. The court has proceeded with patience and tolerance with the expectation of a successful reorganization at the end for the benefit of all parties involved, Debtors and creditors alike. However, at this time these last unsupported requests to extend the effective date violate the basic tenets of Chapter 11 which balance the protection of creditors' rights while giving the debtor the opportunity for a fresh start. Today, almost five years after the filing of the case, creditors are yet to receive the first payment under a confirmed reorganization plan to their detriment. To allow yet another extension would completely disregard the rights of these creditors.

## V.     CONCLUSION

Based on the foregoing, this court hereby denies Debtors' second motion for extension of time to commence plan payments (Dkt. # 388) and the confirmation of the Amended Chapter 11 Plan (Dkt. # 416). The Amended Chapter 11 Plan fails to comply with 11 U.S.C. § 1127(f)(1), which requires a post confirmation modification to comply with the requirements of 11 U.S.C. § 1129. The Amended Chapter 11 Plan fails to comply with 11 U.S.C. §§ 1129(a)(9)(C) and 1129(a)(11) and thus may not be confirmed. Moreover, there being cause for the dismissal of the case under 11 U.S.C. §§ 1112(b)(4)(M) and 1112(b)(4)(N), the case is hereby dismissed.

IT IS SO ORDERED.

In Ponce, Puerto Rico, this 21st day of July, 2023.

María de los Ángeles González
United States Bankruptcy Judge

-24-